Miriam LAZOFSKY, Plaintiff,

v.

SOMMERSET BUS CO., INC., a/k/a Sommerset Union Bus Co., Inc., and John Tinnes, Defendants and Third-Party Plaintiffs,

v.

Kurt A. SANDBERG, Third-Party Defendant.

No. 73 C 841.

United States District Court,
E. D. New York.

Feb. 27, 1975.

---

Lawrence M. Honig, New York City, for plaintiff.

Berman & Frost, by Harold L. Schwab, New York City, for defendants and third-party plaintiffs.

Alexander, Ash, Schwartz & Cohen, by Alan Levine, New York City, for third-party defendant Sandberg.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Plaintiff has moved for disqualification of the undersigned as trial judge pursuant to Title 28 of the United States Code § 144. Plaintiff has also moved to preclude defendants from filing opposition papers to her recusal motion. This latter application has been granted.

### Facts

Plaintiff, a resident of New York, was injured in an automobile accident in New Jersey when a bus driven by the defendant Tinnes (a New Jersey resident) and owned by the defendant Sommerset Bus Co., Inc. (a New Jersey corporation) ran into her stopped automobile and drove the same into an automobile also stopped ahead of her being operated by the third-party defendant Sandberg.

Plaintiff was a victim of poliomyelitis at the age of five and her legs have been, in large part, paralyzed since said misfortune. As a consequence thereof, plaintiff has spent a good portion of her life in and out of various hospitals and, in addition, has been involved in one or more other accidents which contributed to her many problems. Notwithstanding these many handicaps and unfortunate occurrences, plaintiff managed to attend and graduate from college and law school, be admitted to the bar in this State, develop a private practice of her own here in Brooklyn and live an independent life without much, if any, outside help until this particular accident in 1972.

Plaintiff claims that prior to this particular accident she was ambulatory with the aid of crutches and braces but subsequent thereto she has been totally confined to a wheel chair and is now for the most part dependent on other persons. Essentially she claims that in this accident she sustained substantial injuries to her hip, her shoulder and her back.

Plaintiff's case came on to be tried before the undersigned and a jury on December 16, 1974 and continued thereafter until January 7, 1975 when the Court granted defendants' motion for a mistrial predicated upon certain conduct of the plaintiff's attorney.

The grounds of the motion for the Court to disqualify itself for bias are:

1. That the Court "characterized my [plaintiff's] appearance in the courtroom as 'attorney' and 'lawyer'."

2. That on motion of the defendants' counsel the Court declared a mistrial after counsel "realized that my [his] voice was choking and I [he] was starting to feel tears. I [he] turned my [his] back to both the Court and the Jury, walked through the rail of the well, and over my shoulder asked for a recess, and left the Courtroom."

3. That the Court refused to "numerically balance the peremptory challenges allowed by the Court to the Jury panel in respect of a single plaintiff and a single defendant."

4. That the Court restricted plaintiff's counsel in his re-direct examination of plaintiff and her physician.

5. That the Court reversed a prior ruling made at the outset of the trial with respect to the admission of expert and other testimony on the issue of seat belts.

6. That the Court refused to make a definite determination with respect to the applicable law [New York or New

Jersey] until at least the conclusion of the plaintiff's case.

7. That the Court, with the consent of plaintiff's attorney, conferred privately with defense counsel on a number of occasions "but never conferred privately with plaintiff's counsel".

■ As will be seen from the above, plaintiff and her attorney's affidavit set forth no legal grounds for disqualification. Each alleged wrongful act and statement of the Court had its claimed genesis and occurred in the course of the trial itself. Indeed they were, in essence, (with one exception hereinafter discussed), adverse rulings by the Court or admonitions to a plaintiff, who professed to be a trial attorney, to act properly as a witness in court. Under such circumstances, the Supreme Court has repeatedly held that there is no legal basis for recusal. Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Ex parte American Steel Barrel Co., 230 U.S. 35, 33 S.Ct. 1007, 57 L.Ed. 1379 (1913); United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); Mitchell v. Sirica, 502 F.2d 375 (D.C.Cir.), cert. denied 418 U.S. 955, 94 S.Ct. 3232, 41 L.Ed.2d 1177 (1974).

In the *Berger* case, the Supreme Court said (255 U.S. at pp. 31 and 34, 41 S.Ct. at p. 232):

"In Ex parte American Steel Barrel Co., 230 U.S. 35 [33 S.Ct. 1007, 57 L. Ed. 1379],

\* \* \* \* \* \*

The case establishes that the bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case.

\* \* \* \* \* \*

" \* \* \* The section permits only the affidavit of a party, and Ex parte American Steel Barrel Co., supra, decides, that it must be based upon facts antedating the trial, not those occurring during the trial."

In Grinnell (a non-jury antitrust case) more recently it held (384 U.S. at p. 583, 86 S.Ct. at p. 1710):

"The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

Within the past month the Journal of the Section of the American Bar Association, "Litigation", Vol. 1, No. 1 Winter 1975, in an article on the subject said (at p. 23):

"To the extent that generalization is possible, the courts have construed section 144 to require that the bias (or prejudice) be (1) bias in fact (rather than an attitude evidencing the appearance of bias), (2) directed at the party (rather than his attorney or the issues), (3) personal (rather than general, as against a class), and (4) *extra-judicial in origin (that is, not developed in the course of litigation).* \* \* \*." (Emphasis added.)

■ Despite the clarity of the law on the subject, the Court has given at least passing thought to disqualifying itself, on its own motion, not because of any bias against or animosity to the plaintiff (the Court has none), but because of the admiration for and the natural sympathy toward her which it developed during the course of the trial (indeed it would have been extremely difficult, if not impossible, to have done otherwise given her special circumstances) and the feelings which it developed for her plight. Here again, however, one's natural sympathies and feelings which may arise during the course of a proceeding (unless they arise to the status of an actual bias or prejudice for or against either party, and they did not) would not appear to be grounds for disqualification.

■ Two points made by the plaintiff and her counsel in their application papers deserve at least a brief comment. The first is the emphasis placed on the Court's ruling for a mistrial. Quite apart from various other instances of plaintiff's attorney's conduct during the course of the trial, in this Court's opin-

ion the final act of plaintiff's counsel which precipitated the motion for, and the grant of the mistrial, left the Court no alternative. Any other decision at that point would have been highly prejudicial to the defendants and would have in all probability led to a reversal on any appeal taken by the defendants.

■ Secondly, plaintiff's counsel suggests that the Court evidenced a bias against his client because the Court had one or more conferences with defense counsel without his presence in chambers during the course of the trial and never had any such conferences with plaintiff's attorney. The latter part of such statement does not accord with the Court's recollection. Regardless of that fact, however, each and every conference in chambers which the Court had with counsel for the defendants in the absence of plaintiff's counsel was at least had with his consent, if not had at his request, and each (except the last which was an effort to avoid mistrial) was concerned only with attempting to persuade defense counsel to make stronger efforts with their clients to settle the case; i. e., if anything, they were efforts on behalf of the plaintiff. To put it mildly, it is surprising to find plaintiff's counsel arguing that such facts evidenced a bias against his client.

■ The Court has also considered the recently amended paragraph (a) of Section 455 of Title 28 U.S.C. (Public Law 93–512, December 5, 1974) even though the same was not urged upon it by plaintiff or her counsel. This paragraph provides as follows:

"(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The Court has also considered Canon 2 of the ABA Code of Judicial Conduct which requires judges to "avoid impropriety and the appearance of impropriety."

If the words "impartiality might reasonably be questioned" and "avoid impropriety and the appearance of impropriety" were to be interpreted to encompass judicial rulings in the course of a trial or other proceedings, as plaintiff's counsel seemingly suggests herein, then there would be almost no limit to disqualification motions and the way would be opened to a return to "judge shopping", a practice which has been for the most part universally condemned. Certainly every ruling on an arguable point during a proceeding may give "the appearance of" partiality, in the broadest sense of those terms, to one party or the other. Neither the ABA or Congress has, as yet, indicated that the law should be so construed nor have they yet prescribed that parties should be given one or more peremptory charges with respect to judges.

In its report on this Act the House Judiciary Committee states that:

"* * * This sets up an objective standard, rather than the subjective standard set forth in the existing statute * * *. The language also has the effect of removing the so-called 'duty to sit' which has become a gloss on the existing statute. * * *

"While the proposed legislation would remove the 'duty to sit' concept of present law, a cautionary note is in order. No judge, of course, has a duty to sit where his impartiality might be reasonably questioned. *However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.*

"At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation

of a litigant's fear that a judge may decide a question against him into a 'reasonable fear' that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, *but they are not entitled to judges of their own choice.* (Emphasis added.)

Without more definitive statutory language or court interpretation, this Court does not believe that it would be proper for it to attempt to rewrite the law to the indicated extent or even to interpret the above quoted phrases that broadly particularly in view of the consistent rulings of the Supreme Court to the contrary over the years.

Even the lone dissenter (MacKinnon, C.J.) in Mitchell v. Sirica, 502 F.2d 375, at p. 379 (D.C.Cir., 1974) who strongly urged (without success) the application of the "appearance of justice" rule with respect to extrajudicial source bias refused to go so far as to "bias developed *during the very trial.*" In discussing a prior decision in that Circuit (Tynan v. United States, 126 U.S.App. D.C. 206, 376 F.2d 761, 764, cert. denied, 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111 (1967) ), he said (at p. 379):

"We were concerned that disqualifying judges for bias developed *during the very trial* in which disqualification is sought would cripple the courts, and refused to disqualify the judge. Plainly, if such bias were sufficient, virtually every judge in every case would be disqualified and the courts abruptly would cease functioning."

 The easy road would, of course, be for the Court to avoid sitting further on this case by having the same reassigned to another judge and take another case under the random selection system in lieu thereof. The Court's sworn duty, however, is not to do so unless it believes there are proper and reasonable grounds therefor. In this Court's opinion there are not.

Accordingly, the motion for disqualification must be denied in all respects.

So ordered.

In view of the new language contained in paragraph (a) of Section 455 of Title 28 U.S.C., and the indicated attempt to modify the "duty to sit" concept (*cf:* Rosen v. Sugarman, 357 F.2d 794, 797 (2d Cir., 1966); United States v. Tropiano, 418 F.2d 1069, 1077 (2d Cir. 1969), cert. denied 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970) ), this Court is of the opinion, under and pursuant to Title 28 U.S.C. § 1292(b), that its order herein involves a controlling question of law as to which there may be a substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation.