**In re PARR MEADOWS RACING ASSOCIATION, INC., Ronald J. Parr, and Alfred R. Parr, Debtors.**

**Bankruptcy Nos. 879–02996, 79–B–1643 and 79–B–2205.**

United States Bankruptcy Court, E. D. New York, at Westbury.

Aug. 4, 1980.

Weil, Gotshal & Manges, New York City, for Flushing Sav. Bank by Michael L. Cook, Stephen Karotkin, New York City.

Jules V. Speciner, Great Neck, N. Y., for debtors.

Davis, Polk & Wardwell, New York City, for ITT by Stephen H. Case, New York City.

ROBERT JOHN HALL, Bankruptcy Judge.

## I.

Flushing Savings Bank ("Bank") has moved this Court for an Order Disqualifying Judge. For the reasons set forth below, the Bank's motion is denied.

## II.

On January 11, 1980, the Bank moved in the District Court for an order recusing the above captioned cases from the bankruptcy judge. The motion was based, in part, on certain ex parte communications between the Court and participants in the proceedings. On February 1, 1980 the District Court denied the Bank's motion for withdrawal of the reference, and requested that the Court should determine whether the allegation concerning the Court's partiality required that the Court recuse itself from this proceeding. Thereafter, this Court sent a letter to counsel for the Bank requesting that the Court be given copies of all papers filed in the District Court, so that the Court could comply with the District Court's order. Counsel responded to the Court's letter by filing a motion to disqualify the Court.

The Bank contends that the Court has "engaged in ex parte conversation with the debtors' counsel, their confederates, and other adverse parties, thus creating a reasonable appearance of bias in favor of the debtors in these cases." The Bank does not allege that the Court received information regarding disputed issues.[1]

> Although the record is clear that ex parte conversations did exist, the counsel for the Bank obviously cannot state what took place during these conversations. These ex parte conversations create the reasonable appearance of bias and impropriety.

Bank's affidavit in support of motion under 28 U.S.C. section 455(a) for Order Disqualifying Judge (hereinafter "Bank's affidavit") p. 6, ¶ 21.

The affidavits which were submitted in opposition to the Bank's motion, both in this Court and in the District Court, clearly state that the ex parte contacts involved either questions on the administrative aspect of bankruptcy cases, (not necessarily involving the Parr cases), or the exchanging of pleasantries. Indeed, counsel for the debtor in his affidavit stated that as a trustee, he has had many ex parte conversations with bankruptcy judges in Westbury concerning the administration of bankruptcy cases. Mr. Cook, counsel for the bank, in his response reveals the absurd nature of the Bank's motion:

> Mr. Speciner's candid admission of ex parte communications with Bankruptcy Judge Hall and the other two Bankruptcy

---

1. Nor does the Bank allege or show that actual bias exists; it cannot because none exists.

Judges precludes, we submit, reassignment of these cases to any of the two Bankruptcy Judges in Westbury, New York.

Bank's reply affidavit in the District Court dated January [illegible] 1980 in support of a motion under Federal Law of Bankruptcy Procedure 102(b) for Withdrawal of Reference, p. 3, ¶ 4.

If Mr. Cook's position was correct, it would not be much of an overstatement to say that successful motions for recusal could be made in almost every case involving a "bankruptcy practitioner".

### III.

The Bank contends that ex-parte contacts between a bankruptcy judge and participants in a bankruptcy proceeding, regardless of the nature of those contacts, are grounds for recusal. The Bank's contention is wholly without merit.

■ Ex-parte communications, in and of themselves, are not grounds for recusal under either 28 U.S.C. sections 144, 455(a) and (b)(1), the due process clause of the Fifth Amendment to the U.S. Constitution, or the Code of Judicial Conduct.[2] *In the matter of Georgia Paneling Supply, Inc.*, 581 F.2d 520, 522 (5th Cir. 1978) vacated 588 F.2d 93 (5th Cir. 1978); 607 F.2d 117, 118 (5th Cir. 1979) vacated and then reinstated 613 F.2d 137 (1979, 1980); *United States v. Haldeman*, 559 F.2d 31, 133 n.301 (D.C.Cir.1976) cert. denied 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Howell v. Jones*, 516 F.2d 53, 57 (5th Cir. 1975); *Glynn v. Donnelly*, 485 F.2d 692, 694 (1st Cir. 1973); *Bradley v. Milliken*, 426 F.Supp. 929, 941 (E.D.Mich.1977); *Lazofsky v. Sommerset Bus Co., Inc.*, 389 F.Supp. 1041, 1044 (E.D. N.Y.1975); *Martelli v. City of Sanoma*, 359 F.Supp. 397, 400 (N.D.Calif.1973).

It has long been held that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *In re International Business Machines, Corp.*, 618 F.2d 923, 927 (2d Cir. 1980), quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

An ex-parte communication which is occasioned by the exercise of "related judicial functions" does not stem from an extrajudicial source. Thus, a judge's ex-parte communications with prosecutors arising from the judge's administrative duties did not stem from an extrajudicial source. *United States v. Haldeman*, 559 F.2d 13, 133 n.301 (D.C.Cir.1976). Nor was a judge's attempt to persuade defense counsel to make stronger efforts with their clients to settle the case an extrajudicial source. *Lazofsky v. Sommerset Bus Co., Inc.*, 389 F.Supp. 1041 (E.D.N.Y.1975).

■ Moreover, ex-parte communications are not grounds for disqualification when there is a practical necessity for those contacts. *Glynn v. Donnelly*, 485 F.2d 592 (1st Cir. 1973). Certainly under the Bankruptcy Act there is a practical necessity for exparte communications between the judge and the trustee, who are "co-administrators" of bankruptcy cases. See *In re Pacific Homes*, 611 F.2d 1253, 1257 (9th Cir. 1980).

■ In addition, ex-parte contacts are not grounds for recusal when they do not involve discussions of either disputed issues or trial strategy. *Bradley v. Milliken*, 426 F.Supp. 929, 941 (E.D.Mich.1977). The Bank has neither alleged nor shown that this court had reached an opinion on the merits on some basis other than this court's participation in this case. Nor has the

**2.** 28 U.S.C. section 144, 455(a) and (b)(1) have the same legal meaning whether for purposes of bias and prejudice, or when the impartiality of the judge might reasonably be questioned. *In re International Business Machines, Corp.*, 618 F.2d 923, 928 (2d Cir. 1980); *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 965 (5th Cir. 1980); *United States v. Olan-*

*der*, 584 F.2d 876, 882 (9th Cir. 1978). If recusal is not required under 28 U.S.C. section 144, 455, it certainly is not required under the due process clause of the fifth amendment or under the Code of Judicial Conduct. *IBM*, supra, at 932; *United States v. Haldeman*, 559 F.2d 31, 132–33 n. 297.

Bank alleged that the ex-parte contacts involved discussions of disputed issues or trial strategy. The Bank's counsel is ignoring the fact that the day to day administration of bankruptcy cases often requires bankruptcy judges to have ex-parte contacts with various participants in a bankruptcy case. It is common knowledge that:

> The bankruptcy judge is often called upon to resolve disputes between the estate and adverse third parties. The estate is represented by the trustee, usually an appointee of the bankruptcy judge, serving in many cases that are before that judge, and continually being reappointed to new cases as they come in. There usually develops a close working relationship between the judge and "his" trustee, due to the necessity for frequent ex parte contacts between the judge and the trustee in the administration of the case. It is not uncommon to see a trustee enter a courtroom, for a hearing on a matter, from the judge's chambers, followed closely by the judge himself. As often as not, the trustee was working with the judge on a different matter than the one up for hearing. Nevertheless, the combined force of all of these factors seriously compromises the appearance of the bankruptcy judge as an impartial arbiter. They have worked to generate deep suspicion on the part of attorneys who practice in the bankruptcy court as to the fairness of the decisions of the bankruptcy court.

Report of the Committee of the Judiciary, Bankruptcy Law Revision H.R.Rep.No. 95–595, 95th Cong., 1st Sess. ("House Report") 89–90 (1977), U.S.Code Cong. & Admin. News, 1978, pp. 5787, 6051.

Furthermore, this district's local bankruptcy rules, promulgated by the learned judges of the District Court, do not merely condone, but command the bankruptcy judge to have some ex-parte contact with the debtor and the debtor's counsel. Eastern District Court Local Bankruptcy Rule XI–4 provides, in pertinent part, that:

> As soon as practical after petition is filed the debtor, or if the debtor is a corporation, the president or principal operating officer of such corporation, and the debtor's attorney shall attend before the bankruptcy judge for an informal conference to discuss the petition and any matters pertinent thereto.

Certainly the court would not be justified in transferring the matter to another bankruptcy judge because fault is found with the system of administering a bankrupt estate. If the system is at fault, then it should be corrected not by judicial but congressional legislation. *In re Carburetor Corporation*, 91 F.Supp. 782 (E.D.N.Y.1950).

Congress did *attempt* to correct the "bankruptcy system". The House Bill, H.R. 8200, proposed to solve the aforementioned problem by creating a system of United States Trustees. *House Report*, supra, at 99–100, U.S.Code Cong. & Admin.News 1978 at 6061. The United States Trustee was to take over the supervising and appointing functions that were handled by the bankruptcy judges.

> The United States trustees will relieve the bankruptcy judges of their current administrative and supervisory role, and will become the principal administrative officers of the bankruptcy system. Bankruptcy judges, relieved of administrative responsibilities, will take a more passive role, consistent with their judicial responsibilities which will serve to eliminate the institutional bias that exists in the bankruptcy system today. These changes in the present bankruptcy administrative system will accomplish the separation of judicial and administrative functions currently performed by the bankruptcy judges. The judges will become passive arbiters of disputes that arise in bankruptcy cases. The United States trustees will assume the bankruptcy judges' current supervisory roles over the conduct of bankruptcy cases and over individuals serving in the bankruptcy system.

*House Report*, supra, at 101, U.S.Code Cong. & Admin.News 1978 at 6063.

However, the Senate did not favor the United States trustee system.[3] A compromise was reached and a pilot program of United States trustees was established in certain districts for the transition period.[4] 124 Cong.Rec. H11088 (daily ed. Sept. 28, 1978). The Eastern District of New York is not a pilot district and therefore, does not have a United States trustee. 11 U.S.C. section 1501.

The result of the attempted reform of the bankruptcy system has been described as follows:

> Despite Congress' ambitious attempts with the Reform Act, many of the bankruptcy court's duties will continue to be "administrative" in nature. Indeed, in those jurisdictions where United States Trustees will not be appointed, the bankruptcy judge's supervisory role often will remain as administrative as it has always been. Even in those jurisdictions in which a United States Trustee will be appointed, the court will retain many of its' administrative duties.

Eisen and Smrtnik, *The Bankruptcy Reform Act of 1978—An Elevated Judiciary*, 28 DePaul L.Rev. 1007, 1022 (1979).

> In non-pilot project districts there is relatively little separation of administrative and judicial functions and the judges will continue to play an important role in supervising administration.
>
> In non United States trustee districts, the court's role in administration is necessarily larger and the involvement will continue to be substantial.

J. Trost, G. Treister, L. Forman, K. Klee & R. Levin, The New Federal Bankruptcy Code 30–31, 33 (1979).[5]

Accordingly, even under the Bankruptcy Code, bankruptcy judges in non U.S. trustee districts may be required to have certain ex-parte contacts.[6]

The Bank contends that the court's ex-parte communications with Sheldon Lowe, the reorganization trustee, requires the court to recuse itself. As with the other ex-parte communications, the Bank does not allege that any substantive matters were discussed; for, indeed, none were. The first ex-parte communication involved a chance meeting in the crowded hallway, in front of dozens of people, in which the court exchanged pleasantries with Mr. Lowe. But for certain statements made in the Bank's affidavit and memorandum of law, the court would not bother to elaborate on this matter. However, Paragraph 26 of the Bank's affidavit in support of its motion contains the following statement:

> Although affiant Werther did not hear the substance of the conversation be-

---

**3.** The extent of the Senate opposition can be seen from the remarks of Senator Wallop:

> The Senate has prevailed in the most important aspect of the bill, namely the court structure and administration. The concept of the article III, life-time bankruptcy judges as contained in the House-passed bill, is rejected and adjunct courts similar to the present system will be created instead. No vast bureaucracy called the U.S. Treasury [sic] system and located in every judicial district will be established. Instead, a pilot project in a very few districts will be tried. This pilot project will sunset on March 31, 1984. I do not expect it to be renewed or expanded at that time. 124 Cong.Rec. S17405 (daily ed. Oct. 6, 1978).

**4.** *See*, Bankruptcy Reform Act of 1978 section 408.

**5.** Not every one favored the separation of the bankruptcy judges' judicial and administrative functions.

> It is somewhat of a paradox that the Code, while elevating the status of the bankruptcy judge, assigns him a recessive role in the practical administration of the debtor's affairs or in the development of the reorganization plan, on the assumption, it seems, that such preoccupations are not consistent with the judicial functions of the bankruptcy court. Federal judges apparently did not seem to feel the need for such judicial aloofness in Chapter X cases over which they presided. For the time being, let it suffice to note, as was said by a poet no less, that wisdom is often nearer when we stoop than when we soar.

Levy, The Role of the Securities and Exchange Commission and the Judicial Functions Under the Bankruptcy Reform Act of 1978, *54* Am. Bankr.L.J. 29, 34 (1980).

**6.** The court notes that proposed Interim Bankruptcy Rule 5001 which prohibited ex-parte contacts in Bankruptcy Code cases, was not adopted in this district.

tween the Bankruptcy Judge and Mr. Lowe, the Bankruptcy Code provides that a bankruptcy judge "may not preside at, and may not attend, any meeting" of creditors. 11 U.S.C. section 341(c).

This statement is both inaccurate and misleading. First, 11 U.S.C. section 341(c) does not provide that a "bankruptcy judge may not attend *any* meeting of creditors". 11 U.S.C. section 341(c) provides that: "[t]he court may not preside at, and may not attend, *any meeting under this section.*" (emphasis supplied.) The Bank's affidavit does not state that the court attended a meeting of creditors. However, ¶ 26 of the affidavit, by linking the conversation between the Judge and Mr. Lowe with the prohibition contained in 11 U.S.C. section 341, clearly implies that the court did attend a "meeting of creditors" in violation of section 341. The court, in fact, did not preside at or attend the section 341 meeting of creditors or any other meeting of creditors. Such attempts to obfuscate facts are to be deplored. See *In re Beck Industries*, 605 F.2d 624 (2d Cir. 1979).

In addition, in its memorandum of law in support of the instant motion, the Bank states

"*EX PARTE* communication Between The JUDGE AND THE CHAPTER 11 TRUSTEE IS *SPECIFICALLY PROHIBITED* BY THE NEW BANKRUPTCY CODE."

*Bank's Memorandum of Law*, p. 10. (emphasis supplied)

 This statement is false; nothing in the Bankruptcy Code *"specifically"* prohibits ex-parte communications between a bankruptcy judge and a Chapter 11 trustee. Indeed, the Bank did not even attempt to support this statement. Instead, the memorandum of law refers to the House Judiciary Committee's attempt to separate the bankruptcy judge's judicial and administrative functions. As has previously been discussed, the proposed separation of these functions was not adopted in non-United States Trustee districts.

The Bank also states that on December 18, 1979 affiants Cook and Werther "saw and heard" the Bankruptcy Judge ask Sheldon Lowe to meet with the Judge in his chambers. This request was made to Mr. Lowe in open court, only after it was announced that the District Court had reversed this court's order appointing Mr. Lowe as trustee. The Bank's counsel were present when the request was made. The Bank's counsel could have voiced their objections at that time, or they could have requested to be present at the meeting.[7] However, the Bank's counsel remained silent. While Mr. Case, counsel for ITT, may have expressed his intention to appeal the aforementioned district court's order, he never did. The debtor, however, did take an appeal, which was later dismissed. In any event, on April 7, 1980, the Parrs were adjudicated bankrupts, and the Parr Meadows Racing Association, Inc. Chapter 11 case was converted to a Chapter 7 case. Mr. Lowe was not appointed as a "liquidation trustee" in any of these matters.

### Conclusion

 In view of the foregoing, it is clear that 28 U.S.C. sections 144, 455, the due process clause of the Fifth Amendment and the Code of Judicial Conduct do not require recusal under the circumstances extant in these cases. In addition, these cases have been before this court, in one form or another, for almost three years. Transferring these cases at this time would place an intolerable burden on the court which would receive them, and would only further prolong these lengthy proceedings. *Cf. In re Schoenfield*, 608 F.2d 930 (2d Cir. 1979). Accordingly, the Bank's motion is denied.

So ordered.

---

**7.** At that meeting, the court merely thanked Mr. Lowe and his counsel for the time and effort that they expended in these matters, for which they did not receive compensation.