**In re CHECKMATE STEREO & ELECTRONICS, LTD., Debtor.**

**John S. PEREIRA, Trustee in Bankruptcy, Plaintiff,**

**v.**

**CHECKMATE COMMUNICATIONS CO., INC., and/or Checkmate Communications, Ltd. and/or Checkmate Stereo & Co., Inc. and/or Checkmate Automotive and Gerald Wren, Jr. and Gerald Wren, Sr., Defendants.**

**In re CHECKMATE MARKETING CO., INC., Debtor.**

**John S. PEREIRA, Trustee in Bankruptcy, Plaintiff,**

**v.**

**CHECKMATE COMMUNICATIONS CO., INC., et al. Defendants.**

**No. CV 81–920.**

United States District Court, E. D. New York.

June 15, 1982.

Robert P. Herzog, New York City, for trustee.

Ballon, Stoll & Itzler by Ronald S. Itzler, New York City, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants/appellants appeal from a judgment of the bankruptcy court entered against them in these consolidated actions in February, 1981.

### I—INTRODUCTION

John Pereira, trustee in bankruptcy (trustee) of the two debtor corporations, Checkmate Stereo & Electronics, Ltd. (Stereo) and Checkmate Marketing Co., Inc. (Marketing), brought an action against the corporate defendants (Checkmate corporations), and their principals/owners, Gerald Wren, Jr. (Wren or Wren, Jr.), and Gerald Wren, Sr. (Wren, Sr.), pursuant to 11 U.S.C. §§ 541, 544, and 548. The complaints filed on behalf of Stereo and Marketing set forth seven counts. The first alleged that the defendants conspired with an actual intent to hinder, impede, delay, and defraud the creditors and fraudulently conveyed assets belonging to Stereo and Marketing to themselves. The second, third, and fourth counts alleged that these same transfers occurred under circumstances constituting constructive fraud. The fifth count sought attorney's fees. The sixth count alleged a basis for an award of punitive damages. The seventh count alleged usurpation of the good will of the debtor corporations and conversion of the trademark "Checkmate." In addition, the Stereo complaint contained an allegation of breach of duty and usurpation of corporate opportunity by Wren.

The defendants entered a general denial and demanded a jury trial. The jury demand was struck by the bankruptcy court as untimely.

A nine day trial commenced on December 2, 1980. At the conclusion of the plaintiff's case, count seven of both complaints and the claim asserted solely against Wren in the Stereo complaint were dismissed. At the end of the trial, the judge issued an opinion setting forth the basis for an entry of judgment for the plaintiff on its remaining claims other than that for punitive damages.

The bankruptcy court found that on September 30, 1979, Stereo and Marketing were insolvent but possessed substantial assets and engaged in an active business. 9 B.R. 585, at 591–592 (Bkrtcy.1981). By May 15, 1980, when the trustee entered the separate premises of the two debtors to take over their assets, he found that Marketing's assets totalled $500 in cash and Stereo's assets consisted of an assortment of used inventory and some pledged accounts receivable. The assets that had belonged to the debtors were found to be the property of the Checkmate corporations all of which had been owned and operated by Wren and/or Wren, Sr. during this time. *Id.*[1]

---

1. Wren, Sr. is alleged to be the sole stockholder and Wren, Jr. the president of defendants Checkmate Communications, Ltd. and Checkmate Stereo Co., Inc. Wren is owner of 50% of the stock of Checkmate Automotive. Checkmate Communications Co., Inc. was found to be either a "fictitious company, or an erroneous rendering of the corporate name of

The bankruptcy court directed that the properties that were the subject of the fraudulent conveyances and which could be turned over to the bankrupts' estates, be so turned over. *Id.* at 620–622. In addition, a money judgment equal to the value of that property that could not be located was to be entered against the defendants pursuant to 11 U.S.C. § 550. *Id.*

Wren alone was found liable for the value of property transferred directly to him, namely, two automobiles and a total of $12,785.16 in cash. *Id.* at 622. A subsequent ruling by the bankruptcy judge resulted in the inclusion in the judgment of an award of attorney's fees in the amount of $40,000.00.

Appellants timely filed an appeal raising two major points on which they claimed error in the proceeding below: 1) that they were erroneously denied a jury trial; 2) that the trustee failed to sustain his burden of proof by clear and convincing evidence. Six points of less significance denominated as numbers 3 through 8 on the appeal were also raised by defendants; 3) that they were prejudiced by the bankruptcy judge's reliance on the New York Debtor and Creditor Law which they claim was neither pleaded nor argued; 4) that a judgment erroneously was entered against Wren for monies transferred to him after the bankruptcy petition was filed on April 28, 1980; 5) that the circumstances underlying entry of an award of $3,500 against Wren were not properly before the bankruptcy court; 6) that the bankruptcy judge erroneously failed to recuse herself; 7) that the award of counsel fees was excessive; and 8) that irrelevant evidence was erroneously admitted.[2]

## II—JURY TRIAL

On October 8, 1980, during the course of a pretrial conference a question was raised as to defendants' jury demand and the fact that defendants' answer with the endorsed demand was not in the court's file, nor indicated on the docket. Counsel for the trustee did admit that the answer with the jury demand had been served timely upon him on June 30, 1980. The next day, October 9, the defendants filed their answer. On October 10, the trustee moved to strike the jury demand as untimely and thus waived under Rule 39 of the Federal Rules of Civil Procedure (FRCP). Alternatively, the trustee argued that even if the jury demand were not waived on this procedural ground, the issues to be tried were equitable, not legal, and thus defendants had no substantive right to a jury trial. Defendants argued that the judge had discretion to excuse the late filing and stated that their failure to file was due to more than mere inadvertence.

On November 25, 1980, the bankruptcy judge granted the trustee's motion based upon the untimely filing.[3] She stated in her memorandum opinion:

> The rule in the Second Circuit is clear that an untimely request for a jury trial must be denied unless some cause beyond mere inadvertence is shown. It is reversible error for the Court to excuse the untimeliness of a jury demand. *Galella v. Onassis,* 487 F.2d 986, 996–7 (2d Cir. 1973); *Noonan v. Cunard Steamship Co., Ltd.,* 375 F.2d 69, 70 (2d Cir. 1967). An amendment to a complaint does not revive the right to demand a jury trial, except with respect to issues which are raised for the first time by the amendment. *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir. 1973).

The defendants now claim that the bankruptcy judge erred in finding that the jury demand was not timely filed. Alternative-

---

[Checkmate] Communications, Ltd." 9 B.R. at 589.

**2.** On January 19, 1982, following the submission of briefs and oral argument, we issued an interim opinion remanding the case to the bankruptcy judge in order to obtain a clarification of the bases in the record for her findings

as set forth in her opinion of February 5, 1981. 9 B.R. 585. Her opinion on remand was issued on March 16, 1982.

**3.** The bankruptcy judge indicated she would entertain a motion for reconsideration if one were filed. No such motion was ever made.

ly, they claim that even if the demand was untimely, the bankruptcy judge erroneously held that such a failure constitutes a waiver.

In support of their first contention that the jury demand in fact was timely filed, defendants point to the bankruptcy court docket sheet, on which there now appears an entry number 7a dated June 30 indicating a timely filing of the answer and jury demand.

Defendants should know that this argument is meritless and that this entry was not on the docket sheet at the time it was examined by the bankruptcy judge on October 8, 1981. That docket entry was erroneously made following the discussion on this question before the bankruptcy judge on October 8. Counsel for the trustee, during the discussion, wrote "rec'd mail 6/30", the date on which he had received defendants' answer, on a copy of that document and handed it up to the bench. It was this copy of the answer with counsel's notation that was erroneously docketed as entry number 7a.

■ Defendants' second contention is not however as easily disposed of. There is some validity to their argument that an untimely filing does not constitute a waiver and that all of the cases cited by the bankruptcy judge in her opinion ordering the jury demand struck refer to situations in which a jury demand was not timely *served.* Those cases are clear in requiring timely service of the jury demand. An inadvertent failure to make that demand does not permit a judge to exercise discretion under FRCP 39(b)[4] to excuse the waiver. *Reefer*

*Express Lines v. Arkwright-Boston*, 87 F.R.D. 133, 135 (S.D.N.Y.1980).

The bankruptcy judge based her decision upon Interim Bankruptcy Rule 9001 which is in turn based upon and substantively identical to Rule 38 of the Federal Rules of Civil Procedure.

Rule 38 provides in pertinent part:

(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

\* \* \* \* \* \*

(d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. . . .

Fed.R.Civ.P. 38(b), (d).[5]

On its face, Rule 38(b) (and Bankruptcy Rule 9001(a)) requires only timely service of a jury demand. The Second Circuit has discussed, although not decided, the waiver question raised by a failure to file. In *Rosen v. Dick*, 639 F.2d 82 (2d Cir. 1980), the trustee argued that the defendant had waived his right to a jury trial where the docket sheet had not been marked to indicate filing and where only the plaintiff (not other defendants) had been served. The Court, at one point stated that the "[i]mproper or incomplete notations on the

---

**4.** Rule 39(b) of the Federal Rules of Civil Procedure provides:

(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.
Fed.R.Civ.P. 39(b).

**5.** Rule 5(d) which is discussed explicitly in Rule 38(d), but is applicable as well to Rule 38(b), provides:

(d) Filing. All papers after the complaint required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter.
Fed.R.Civ.P. 5(d).
Bankruptcy Rule 705(b), which was also relied upon by the bankruptcy judge differs from Rule 5(d)'s "reasonable time" requirement in that it requires that papers "shall be filed with the Court not later than the second business day following service." Bankr.R. 705(b).

docket sheet, which is under the court clerk's exclusive control, will not constitute a waiver for failure to file, so long as the party complies with the terms of Rule 5(d)." *Id.* at 89. This statement gives us pause because although the factual circumstances of *Rosen* differ from the circumstances before this Court, the Second Circuit does suggest by this statement that Rule 38(b) must be read with Rule 5(d) so that a jury demand may be properly made only where service is accompanied by filing within a reasonable time. On the other hand, the Circuit Court, apparently recognizing that the intentional mention of Rule 5(d) in Rule 38(d), and its absence from Rule 38(b) serves some purpose commented in dictum as follows:

> There is a possibly problematic difference between subsection (b) governing jury demands and subsection (d) governing waivers. Rule 38(b) requires only service of the demand for an effective invocation of the right, whereas 38(d) speaks, in the conjunctive, about failing to serve and failing to file. Apparently, if a party fails to serve *or* fails to file, there has been no waiver. If a party has properly served the other parties, but failed to notify the court, a ruling that the demander has not waived the jury right is still fair to the other litigants, even if inconvenient for the court. On the other hand, if a party files a jury demand, but fails to serve it on the other parties, it would be manifestly unfair to say that he is nonetheless entitled to a jury trial. *Biesenkamp v. Atlantic Richfield Co.,* 70 F.R.D. 365, 366 (E.D.Pa. 1976). This circumstance could be handled by saying that, even if a party who fails to serve his demand has not formally waived the jury right under 38(d), he or she has effectively waived it because subsection (b)'s ten-day limit precludes an effective demand.

Addressing this problem generally, Professor Moore suggests that the rules on demand and waiver "should be fairly applied. In the event it is clear that the applicable provisions of subdivisions (b) and (c) . . . have not been observed, then the waiver provisions . . . should be enforced, subject, of course, to discretionary relief . . . pursuant to Rule 39(b)." 5 Moore's, *supra,* ¶ 38.43, at 38–380. *Id.* at 89 n. 8.

The Circuit Court in this formulation seems to be suggesting that where there has been proper service but an untimely filing, the trial court has some discretion to balance the factors of fairness to the other litigants and to the court.

It is clear that in this case, the bankruptcy judge did not engage in any such exercise of discretion, but believed herself bound to find the waiver. In examining the factors present here however, it does not appear that the bankruptcy court's inconvenience, to the extent there was any at all, would defeat defendants' properly served claim to a jury trial. The court was appraised of the jury demand almost two months prior to trial, and the trustee has admitted that he was timely notified.

Although we thus find that the bankruptcy court erroneously denied defendants' request for a jury trial on procedural grounds, remand of this case on that ground is not required unless we also find that defendants had a substantive right to a jury trial.

Defendants argue in this case that the trustee set forth a cause of action for conversion and sought and received a money judgment against them. They assert that although equitable claims may well be present here, the action involves legal claims and thus, under *Beacon Theaters Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), they are entitled to a jury trial.

Section 1480(a) of Title 28 governs the right to a trial by jury under the new Bankruptcy Code and provides in pertinent part:

> (a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a

case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

28 U.S.C. § 1480(a).

■■■ The Bankruptcy Code expands the jurisdiction of the bankruptcy courts from that existing under the former Bankruptcy Act but it does not expand the Seventh Amendment right to a jury trial. Thus where a right to a jury trial existed prior to enactment of the new code, section 1480 makes clear that it will not otherwise be diminished. The mere fact however, that a money judgment was entered in this case does not mean that the claims asserted in the complaint necessarily fall within the ambit of the Seventh Amendment. "Monetary relief may flow from an equitable claim without acquiring a legal character." *Towers v. Titus*, 5 B.R. 786, 795 (D.C.N.D. Cal.1979) (and *see* cases cited therein). Thus defendants must show, in order to prevail on their appeal, that irrespective of the mere fact that a money judgment was entered here, the trustee's claim was a legal, not an equitable one.

We note at the outset, that the question is not easily resolvable. Commentators and courts seem to have struggled considerably with the legal/equitable distinctions which trigger or defeat the right to a jury trial. In *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court set forth three factors to be applied in determining the nature of a claim, that is whether legal or equitable: "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries." *Id.* at 538 n. 10, 90 S.Ct. at 738 n. 10. The Court further commented on the fact that the first of these factors "requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply." *Id.*

■■■ Our task is made somewhat easier than appears at first blush by the fact that actions of the type presented in this case are not rare but have been before the courts innumerable times. The complaints here are based upon transfers made to the defendants and designed to defraud creditors of the bankrupt corporations. Such fraudulent conveyance claims have consistently been held to be cognizable in equity. *See Hyde Properties v. McCoy*, 507 F.2d 301 (6th Cir. 1974); *Senchal v. Carroll*, 394 F.2d 797 (10th Cir.), *cert. denied*, 393 U.S. 979, 89 S.Ct. 448, 21 L.Ed.2d 440 (1968); *Damsky v. Zavatt*, 289 F.2d 46 (2nd Cir. 1961); *Johnson v. Gardner*, 179 F.2d 114 (9th Cir. 1949), *cert. denied*, 339 U.S. 935, 70 S.Ct. 661, 94 L.Ed. 1353 (1950).

Section 550(a) of the Bankruptcy Code which governs the liability of a transferee of an avoided transfer provides in pertinent part that except under circumstances not applicable here, "to the extent that a transfer is avoided under section 544, . . . [or] 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property." 11 U.S.C. § 550(a).

The statute on its face clearly authorizes the type of recovery provided for in the judgment in this case. *Collier's* in commenting on the statute notes that in a situation such as the one here, (which is indicated in that treatise to be the usual or normal situation) where the trustee couples an action to avoid a transfer with one for recovery of the property or its value, it is unclear as to whether a jury trial right exists on either question. 4 Collier on Bankruptcy ¶ 550.02 at 550–5 n. 5 (15th ed.). In addition, *Collier's* discusses the fact that the Code, although providing no guidelines as to when the value of property should be awarded in lieu of a recovery of the property itself, does reject the "limitation of section 60b [of the old Bankruptcy Act] which required restitution of the property itself, if available . . . ." *Id.* at 550–5—550–6 n. 6.

This second comment suggests that a decision to award the value of the property rather than the property itself does not in fact change the nature of the initial claim from equitable to legal. Rather, the decision to award a monetary value appears to

flow directly from the equitable claim, and it is only the tangible substance of the recovery that is altered.

An analysis of a case similar to the instant case can be found in *In re Fleming*, 8 B.R. 746, 7 Bankr.Ct.Dec. 252 (Bkrtcy.N.D. Ga.1980). There the district court upheld a bankruptcy court ruling that plaintiff's prayer for a money judgment for the value of a fraudulently conveyed yacht was incidental to the primary relief sought and that the action was one in equity. *Id.* 8 B.R. at 749, 7 Bankr.Ct.Dec. at 254. The district court found that *Dairy Queen v. Wood, supra*, and *Beacon Theaters, Inc. v. Westover, supra*, were not controlling because

(i)n those cases, legal and equitable claims were presented for which both legal and equitable relief were sought. Here a money judgment is sought as an alternative remedy on a claim and in a proceeding that is clearly equitable in nature. . . .

\* \* \* \* \* \*

The trustee here seeks to recover not damages but assets which he alleges are wrongfully withheld from the estate. The money judgment is an integral part of the equitable relief he seeks. Furthermore, the claim itself is equitable in nature. Hence, we conclude that the defendant has no right to a jury trial on this issue.

*In re Fleming, supra*, 8 B.R. at 750, 7 Bankr.Ct.Dec. at 254. *See also Towers v. Titus*, 5 B.R. 786 (D.C.N.D.Cal.1979).

The money damages awarded in this case cannot be construed separately from the declaration that the conveyances here were fraudulent and intended to deprive the creditors of access to Stereo's and Marketing's assets. The bankruptcy judge direct-

ed that to the extent possible fraudulently transferred property was to be returned. 9 B.R., *supra*, at 622. Were a money judgment not entered for the value of those assets (stocks of merchandise) held to have been fraudulently conveyed but no longer in the hands of the defendants, they (the defendants) would have, to say the least, unfairly benefitted from the circumstances. Had the merchandise been available we assume it would have been recovered by the trustee. The award of money damages flows inexorably from the same wrong and circumstances which give right to, and was a mere "alternative" to an avoidance of the transfer and a return of the property itself to the trustee. Thus we find in this case legal issues were not presented which would have entitled defendants to a jury trial.

## III—SUFFICIENCY OF EVIDENCE

Defendants' second claim on appeal is that the trustee failed to prove the facts alleged in the complaints by clear and convincing evidence.[6] In considering this point, we have joined with it defendants' fourth claim on appeal in which defendants allege that the Bankruptcy Court erred in granting a judgment against Wren for the sum of $9,285.16, money transferred to him subsequent to the filing of the involuntary petition. Defendants' argument on this point is in essence the same as that in point 2, i.e., that the evidence was insufficient to prove a transfer to Wren. To a large degree, the testimony offered by the trustee was elicited from Wren,[7] who was the major witness for both sides. Defendants argue that the trustee failed to present affirmative proof of his allegations; that the bankruptcy court judge chose not to credit much of the testimony of Wren and his employees, and that the bankruptcy judge

---

**6.** At the conclusion of the trial, the trustee argued that the appropriate standard of proof in this action is a fair preponderance of the evidence, citing in support of his argument the cases cited in note 1 of 4 Collier on Bankruptcy ¶ 548.10. The same footnote, however, also cites cases supporting defendants' position that clear and convincing evidence is required to prove a fraudulent conveyance. Because we find that the evidence here would support the

bankruptcy judge's findings of liability under the clear and convincing standard, we need not determine which standard is in fact mandated.

**7.** Wren, Sr. did not appear at the trial, although his deposition was admitted. Admission of this evidence is the eighth point of error alleged in this appeal and is addressed in part VIII of this opinion.

then erroneously inferred the opposite of that discredited testimony in finding for the trustee.

The defendants enumerate eight specific points which they believe exemplify the manner in which the bankruptcy judge "permit[ted] her disbelief of said testimony to operate as the substitution of the proof required to be presented by the Trustee." Brief for Def.-App. at 20.

■ The mere assertion of these points does not relieve defendants of the burden of showing that the factual findings of the bankruptcy judge are clearly erroneous. Fed.R.Civ.P. 52; Bankr.R. 810; *In re Huntington Ltd.*, 654 F.2d 578, 583 (9th Cir. 1981); *Matter of Multiponics*, 622 F.2d 709, 713 (5th Cir. 1980); *Gross v. Fidelity & Deposit Co. of Maryland*, 302 F.2d 338, 339 (8th Cir. 1962); *see also, In re Cadarette*, 601 F.2d 648, 650–51 (2d Cir. 1979); *In re Fabric Tree*, 558 F.2d 1069, 1072 (2d Cir. 1977).

In our interim opinion on this matter we remanded this case to the bankruptcy court for the specific purpose of obtaining clarification as to which testimony was credited and which evidence was relied upon by the bankruptcy judge in making her findings of fact. Specifically, we sought clarification as to those findings set forth by the defendants as clearly erroneous under point 2 of this appeal.[8] The bankruptcy judge responded with a 75 page opinion which clearly sets forth the evidentiary bases for her findings, directing us to the exhibits and testimony which were credited by her.

■ Having reviewed the entire record in this case, the transcripts, exhibits, and opinions, we find that not only was the bankruptcy judge not clearly erroneous, but the evidence fully supports her findings.

The bankruptcy judge has delineated in her opinion on remand her credibility evaluations and the weight given to the testimony in support of her findings. The defendants' characterization of the bankruptcy court's approach to and evaluation of the evidence simply is not supportable in light of the record.

As to defendants' allegation of error in point 4 on appeal regarding the finding against Wren, we note that the trustee introduced evidence indicating that Wren had indorsed and cashed a check drawn on the debtor Stereo's account. It is clear that although Wren testified that he used the cash to make payments to a creditor, the bankruptcy court did not credit his testimony. Rather, the court found that he had kept these funds for his own use. Defendants have not shown that the judge's finding of fact was clearly erroneous.

Thus, we find as to points 2 and 4 that there is no basis for a reversal of the bankruptcy court's decision.

## IV—BANKRUPTCY COURT'S RELIANCE ON NEW YORK LAW

■ The bankruptcy judge ordered that Wren return a 1973 Mercedes Benz and a 1976 Mercedes Benz leased by Stereo and subsequently transferred to him. Alternatively, she found that if he could not return the cars, he must turn over their value which was placed at $4,000 for the 1973 car and $10,000 for the 1976 car. 9 B.R., *supra*, at 623.

---

**8.** Defendants specifically challenge the following findings of the bankruptcy judge:

1—that Wren, Sr. was only a "figure-head";
2—that the principal creditor (Audiovox) had been deceived by the defendants into believing Checkmate Communications Co., Inc. and/or Ltd. was in the cordless telephone business when it was also involved in the same type of business as the debtors;
3—that Checkmate Stereo & Co. was organized in 1980 "as a device to receive the fraudulent conveyance of the assets of [the debtor] Marketing".

4—that Audiovox had not been advised of the transfer of leases, furniture, and fixtures owned by the debtors;
5—that much of the merchandise turned over to the trustee as allegedly belonging to Stereo was used;
6—that the trustee and Audiovox representatives were denied access to portions of the premises occupied by the defendants;
7—that the burglary of the Stereo premises inadequately accounted for the loss of Marketing's inventory and records, and some of Stereo's critical records.

The judge found that the two vehicles were carried on the books of Stereo in August 1979, *id.* at 622, a time when Stereo was "deeply indebted." *Id.* at 623. She did not credit Wren's testimony that his loan account was reduced in consideration for the transfer of funds. She found that the conveyances of the two vehicles were presumptively fraudulent, *citing Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934) and cases therein, and *Ga Nun v. Palmer*, 216 N.Y. 603, 611–12, 111 N.E. 223 (1916), and voidable under section 273 of the New York Debtor and Creditor Law.

The defendants argue that they were unaware that the transfer of the 1973 Mercedes was in issue; that in any case that car was transferred to Wren in October 1978, more than one year before the petition was filed, and they had no notice that the New York Debtor and Creditor Law would be applied in this case.

As we noted above, the bankruptcy judge found that the 1973 Mercedes was not transferred before August, 1979, while the petition was filed in April, 1980. Such a finding is supported by the testimony of Wren's accountant, Harris Tunick. (Tr. 9 at 80). The bankruptcy court chose to discredit Wren's testimony that the 1973 Mercedes was transferred to him in October 1978. The defendants have not shown that the bankruptcy judge's finding was clearly erroneous.[9]

Secondly, we note that the Stereo complaint clearly alleges a fraudulent conveyance of all the debtor's assets. Paragraph twentieth of that complaint sets forth a list of assets, the return of which was sought. While the cars are not mentioned, the list by its own terms is not exclusive.

**9.** The defendants assert in their brief on appeal that the only evidence as to value of the two vehicles was testimony by Wren as to the amounts by which his loan account was reduced in exchange for the transfer of vehicles.
Defendants find it incredible that the bankruptcy judge could discredit Wren's testimony as to the fact that there was consideration paid for the vehicles and yet credit his testimony as to the value of the vehicles.

Finally, we find that any reference by the bankruptcy judge to the New York Debtor and Creditor Law should not have surprised the defendants. Section 544 of Title 11 of the United States Code which was pleaded in the first paragraph of both the Stereo and Marketing complaints provides in pertinent part:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b).

Thus, defendants were, or should have been fully apprised of the fact that New York State law could be used as the basis for the avoidance of a transfer.

## V—RECOVERY OF FUNDS TRANSFERRED BY MARKETING TO WREN'S ATTORNEY

The bankruptcy judge found that $3,500 was paid by the debtor Marketing to the lawyer who represented Wren in his divorce proceeding. She held that the payment constituted both a voidable preferential transfer under 11 U.S.C. § 547(b) and a fraudulent conveyance. 9 B.R., *supra*, at 623.

Defendants contend that the trustee should be relegated to an action against the attorney who was the recipient of the check issued by Marketing. The bankruptcy court concluded correctly that under section 550 of the Bankruptcy Code the trustee could recover the proceeds of the Marketing check from Wren, the person "for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1).

Assuming that the defendants are correct and that this is what was done, we find nothing inconsistent in the bankruptcy judge's action. Wren had a motive to fabricate a story about the reduction of the loan account as consideration for the transfer. He had no reason to fabricate the value of the vehicles.

## VI—RECUSAL MOTION

The defendants contend that as a result of other proceedings in the bankruptcy court the bankruptcy judge had prior knowledge concerning the defendants and had determined the outcome of this case prior to the completion of trial. In addition, they argue that the judge pre-determined the outcome while acting affirmatively upon the trustee's application for an attachment and/or temporary restraining order.

The defendants made an oral application that the bankruptcy judge recuse herself which she denied as follows:

I can assure Mr. Langer, knowing my own mind better than anybody else, that I have not made up my mind on the merits, and I will decide this case in terms of the evidence presented at this trial.

Also, I think it's well established that the fact that a court has ruled on a preliminary matter, including rendering a decision on an application for a temporary injunction, does not render it incapable of deciding a trial subsequently on the merits.

On the contrary. It's generally assumed that the same judge who heard an application for a preliminary injunction will go on, for example, and hear the case for a permanent injunction.

Again, hopefully, I'll have some authority. Again, it's not, as I would prefer it, in our own circuit, but I think the law is clear. I'm relying on *Senchal v. Carroll*, 394 F. Second, 797, in which the court, dealing, I suppose, with a similar application for disqualification, the appellate court agreed that the file [sic] court was not disqualified and had a duty to proceed even though he had used strong language in statements at the conclusion of the hearing on a temporary restraining order.

The court of appeals pointed out that it was necessary that he be convinced before restraining order could issue. For these reasons, the Court is not recusing itself.

I think it would be unfair to the other judges in what is an overworked court at the present time to shift to them the burden of this litigation, particularly after a full day of trial, or what is now two full days of trial.

Tr. 10 at 44–46.

 The bankruptcy judge's decision was not in error. The law as to a recusal based upon bias as set forth by defendants is that "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *see also, Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir. 1980); *United States v. Wolfson*, 558 F.2d 59 (2d Cir. 1977); *Mitchell v. Sirica*, 502 F.2d 375 (D.C.Cir.), *cert. denied*, 418 U.S. 955, 94 S.Ct. 3232, 41 L.Ed.2d 1177 (1974); *Coyne v. Houss*, No. 81 Civ. 2198 (E.D.N.Y. 1981); *Hill v. Town of Islip*, No. 80 Civ. 1835 (E.D.N.Y.1981); *Lazofsky v. Sommerset Bus Co.*, 389 F.Supp. 1041 (E.D.N.Y. 1975). It is clear from a reading of this record that "[n]one of [the bankruptcy judge's comments] appear to have arisen from an extrajudicial source or 'resulted in the formulation of an opinion on the merits not based upon what the judge has learned by [her] participation in the proceedings.'" *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976) *quoting United States v. Sclafani*, 487 F.2d 245, 255 (2d Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973).

## VII—ATTORNEY'S FEES

 Defendants challenge the award of $40,000 in attorney's fees made pursuant to section 276–a of the New York Debtor and Creditor Law as 1) excessive and 2) unsupportable in light of the alleged insufficient evidence in this case. As to defendants' second contention, this argument is disposed of by our earlier holding that the

bankruptcy judge did not err in her findings of fact. We do agree, however, that the award is excessive.

There is no challenge to the affidavit of the trustee's attorney, Mr. Herzog, wherein he indicates an expenditure of 239.90 hours.

Mr. Herzog sought compensation at the rate of $250.00 per hour. The bankruptcy judge reduced the rate to $150.00 per hour. She noted in her opinion of February 19, 1981, that $100 per hour is close to the minimum currently being charged by experienced attorneys in "this geographic area." She then made allowance for Mr. Herzog's "skill, experience, and professional standing." We believe that the judge's description of Mr. Herzog's skills and the difficulties presented by this case is not in issue. What is questioned here is the valuation of his services and the problems presented by this case. In balance, we believe a $100.00 per hour figure is commensurate with prevailing rates and affords adequate compensation to Mr. Herzog. Compare, *Selzer v. Berkowitz*, 477 F.Supp. 686 (E.D.N.Y.1979), *vacated on other grounds and remanded sub nom. Selzer v. Fleisher*, 629 F.2d 809 (2d Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). As we see it, in matters of this type there should be no extra compensation for particular skills and difficulties unless the latter be truly exceptional which is not the case here. Thus we find that the award of $40,000 in attorneys' fees is arbitrarily excessive and we hereby reduce the award to $24,000.

## VIII—ADMISSION OF DEPOSITIONS AND TRANSCRIPTS

Defendants contend that they were prejudiced by the admission of the pre-trial deposition of Wren, Sr. without a showing by the trustee of his unavailability and without the trustee's delineation of those portions of the deposition he (the trustee) accepted as truthful. Similarly, defendants contend they were prejudiced by the admission of Gerald Wren, Jr.'s testimony taken before the bankruptcy judge during the earlier application by the trustee for an attachment and/or temporary restraining order without specifying those parts he accepted as truthful.

In effect, defendants argue that by failing to specify those portions of the deposition and testimony he relied upon as truthful, the trustee was "accepting all of it as truthful." Brief for Appellants at 59.

Defendants' contentions are without merit. The deposition of Wren, Sr., a party to this action, was properly admitted under Rule 32(a)(2) of the Federal Rules of Civil Procedure and Rule 801(d)(2) of the Federal Rules of Evidence. The fact that Wren, Sr. was not present is not relevant to our consideration as a showing of unavailability is simply not required under either rule. The failure of the trustee to delineate those portions of the deposition upon which he was relying does not mean that he is deemed to vouch for the truth of the statements made in that deposition. Under the Federal Rules of Evidence, "[t]he credibility of a witness may be attacked by any party, including the party calling him." Fed.R.Evid. 607. Statements within the deposition itself, or testimony or other evidence at trial that served to impeach Wren, Sr.'s statements could well have been considered by the judge on the question of Wren, Sr.'s veracity. *See* Fed.R.Evid. 806.

Similarly, the introduction of Wren, Jr.'s prior testimony without a delineation of those portions accepted as truthful by the trustee does not bind the trustee to vouch for the truthfulness of Wren, Jr.'s entire testimony. Both the deposition and the testimony constituted evidence which the bankruptcy judge was free to evaluate and consider. Defendants have shown no prejudice resulting from the admission of this evidence.

Finally, defendants argue they were similarly prejudiced by the admission of Harris Tunick's deposition. There is no indication in the record that Mr. Tunick's deposition was admitted into evidence.

In light of the foregoing, the appeal is granted only insofar as a reduction in the award of attorney's fees is sought. The balance of the appeal is denied and the

**414**

decision and judgment entered in the bankruptcy court is affirmed.

SO ORDERED.