## In re RICHMOND PRODUCE COMPANY, INC., Debtor.

### J. Taylor HALEY, Trustee, Plaintiff,

### v.

### Donald SORANI, the Estate of Patricia Sorani, Bank of California, Defendants.

**Bankruptcy No. 4–89–00513 N3.**
**Adv. No. 4–90–0052 AT.**

United States Bankruptcy Court,
N.D. California.

June 26, 1990.

T. Scott Tate, Bronson, Bronson & McKinnon, San Francisco, Cal., for plaintiff.

William J.A. Weir, Murphy, Weir & Butler, San Francisco, Cal., for defendant Bank of California.

Peter H. Ferris, Lempres & Wulfsberg, Oakland, Cal., for other defendants.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

Defendants Donald Sorani and the Estate of Patricia Sorani (collectively hereinafter "Sorani") move to dismiss two claims seeking to avoid fraudulent transfers and to recover their value from Sorani pursuant

to 11 U.S.C. § 550(a)(1) as the entity for whose benefit the transfers were made. Sorani contends that these claims are insufficient as a matter of law.[1] For the reasons stated herein, the motion is denied as to the first claim for relief and granted as to the second without prejudice. Plaintiff is given twenty days from the date of service of this Memorandum and the accompanying Order to file an amended complaint in accordance with this Memorandum and with the Court's earlier oral rulings.

## SUMMARY OF FACTS

Prior to August 1987, Sorani owned all the outstanding stock (the "Stock") in the above-captioned debtor (the "Debtor"), a produce wholesaler located in Richmond, California. In August 1987, Sorani agreed to sell the Stock to John Clow ("Clow") for approximately $4 million (the "Sale Agreement"). It was agreed that approximately $2 million of the purchase price would be paid in cash and that the balance would be evidenced by a promissory note (the "Clow Note"). According to the Sale Agreement, the Clow Note was to be secured either by a letter of credit or by personal property owned by Clow. It was also agreed, among other things, that the Debtor would employ Sorani as a consultant for one year for $5,000 per month.

The complaint herein (the "Complaint") alleges that, at the time of the Sale Agreement and in connection with it, the Debtor granted Sorani a security interest in all the Debtor's assets as additional security for the Clow Note (the "Corporate Security Agreement"). The Sale Agreement does not make reference to the Corporate Security Agreement, and the Complaint does not specify whether this security interest was granted in addition to or in lieu of the letter of credit or security agreement in Clow's

personal property promised to Sorani by the Sale Agreement.[2]

The Complaint alleges that, in February 1988, the parties agreed to modify the manner in which payment of the balance of the sale price was secured (the "Post–Closing Agreement"). They agreed that Clow would provide Sorani with a $1,550,000 irrevocable letter of credit (the "Letter of Credit") in exchange for the Corporate Security Agreement. It was also agreed that the debtor would employ Sorani for one year from February 1988 at the rate of $10,000 per month instead of for one year from December 1987 at the rate of $5,000. According to the allegations of the Complaint, this modification was effectuated as follows:

14. On of after February, 1988, to effectuate the Post–Closing Agreement, and with the knowledge, participation and consent of Donald Sorani, Clow: (1) caused debtor to borrow the sum of $1,500,000 from Mechanic's Bank of Richmond, California, secured by a lien on all of the tangible and intangible assets of debtor and the proceeds thereon (the "Mechanic's Bank Note" and the "Mechanic's Bank Security Agreement"); (2) caused debtor to transfer the proceeds of the Mechanic's Bank loan to himself, (3) used the Mechanic's Bank loan funds to purchase a $1,550,000 Certificate of Deposit; and (4) used the Certificate of Deposit to secure issuance by the Bank of California of their irrevocable Letter of Credit No. I–22320 in favor of Sorani as a guarantee for Clow's personal debt to Sorani....

In February 1989, according to the Complaint, Clow defaulted on the $2 million Clow Note, and Sorani made demand on the Letter of Credit and was paid $1,550,000 by BankCal. A few days later, BankCal "ex-

**1.** Sorani's motion also attacked other claims on various grounds. The Court ruled orally on these other grounds. Some of the grounds for dismissal were granted without prejudice, and the plaintiff was directed to amend the Complaint in accordance with the Court's comments. However, the Court excused the plaintiff from doing so until it had issued its written decision on the first and second claims for relief.

**2.** In Sorani's Supplemental Memorandum of Points and Authorities ("Sorani's Supplemental Brief") filed in connection with the motion herein, Sorani represents that the Corporate Security Agreement was provided "as an interim measure ... until Clow could supply the originally agreed upon collateral for the promissory note." (Sorani's Supplemental Brief, page 2, lines 19–22.)

ercised its rights as security holder in Clow's CD" (Sorani's Supplemental Brief, page 4, lines 21–22).

The Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on February 7, 1989. In the first and second claims for relief in the Complaint, plaintiff, the Debtor's trustee, seeks to avoid the transfers described in paragraph 14 of the Complaint and to recover their value from Sorani and The Bank of California ("BankCal") pursuant to 550(a). The first claim for relief focuses on the transfer from the Debtor to Clow and seeks to avoid the transfer pursuant to 11 U.S.C. § 548. The second claim for relief focuses on the transfer from Clow to Bank-Cal and seeks to avoid the transfer pursuant to 11 U.S.C. § 544(b)[3]. Clow is alleged to have been the constructive trustee for the Debtor in effectuating the latter transfer. Both transfers are alleged to have been made for inadequate consideration and with actual intent to hinder and delay creditors of the Debtor.

Recovery is sought from BankCal and Sorani as the ultimate transferees of the specified transfers pursuant to 11 U.S.C. § 550(a)(2) and against Sorani as the entity for whose benefit the transfers were made pursuant to 11 U.S.C. § 550(a)(1). Clow is also a debtor in a pending chapter 11 case, and thus has not been joined as a defendant in this adversary proceeding. Both of the transfers specified above appear to have occurred within one year prior to the commencement of this bankruptcy case. Only Sorani, not BankCal, has moved to dismiss these claims.

## DISCUSSION

### A. INTRODUCTION

■ A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. Its purpose is to test the legal sufficiency of a complaint. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978) *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). With some exceptions not relevant to this proceeding, the factual allegations of the complaint must be taken as true and construed in the light most favorable to the plaintiff. *N.L. Industries, Inc., v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *Mark v. Groff*, 521 F.2d 1376 (9th Cir.1975). In accordance with these standards, in determining this motion, it must be accepted as true that the transfers by the Debtor to Clow and thereafter by Clow to BankCal were without adequate consideration to the Debtor and were made with actual intent to hinder or delay creditors of the Debtor.

■ A motion to dismiss for failure to state a claim is a disfavored motion and is rarely granted. *Madison v. Purdy*, 410 F.2d 99 (5th Cir.1969). Courts are particularly reluctant to grant such a motion when the claim in question asserts a novel or extreme theory of liability. Such theories are best tested for legal sufficiency in light of actual, rather than alleged facts. *Shull v. Pilot Life Insurance Co.*, 313 F.2d 445 (5th Cir.1963); *Electrical Construction & Maintenance Co. v. Maeda Pacific Corporation*, 764 F.2d 619, 623 (9th Cir.1985).

■ The first and second claims for relief both attempt to state a claim for recovery against Sorani under both 11 U.S.C. § 550(a)(1) as the entity for whose benefit the transfer was made and under 11 U.S.C. § 550(a)(2) as the "ultimate" transferee. At the hearing on the motion, the Court ruled orally that recovery could not be had from Sorani as an "ultimate" transferee under 11 U.S.C. § 550(a)(2).[4] The Court reaffirms this ruling. To be an ultimate transferee, one must receive the fraudulently transferred property or, at a mini-

---

**3.** *Section 544(b)* permits the trustee to assert the rights of unsecured creditors under state law. The Complaint does not state expressly the state law upon which the second claim for relief is based. Presumably, that claim is based on Section 3439 et seq. of the California Civil Code, the provisions of which are almost identical to Section 548. The Court has granted Sorani's motion to require the plaintiff to state more specifi-

cally whether this is so. However, for the purposes of this decision, the Court will assume that this is the case.

**4.** The Court construes "ultimate" as synonymous with "mediate" as used by 11 U.S.C. § 550(a)(2).

mum, its proceeds. It is well established that the issuance of a letter of credit creates an independent obligation on the part of the issuer and that payment on the letter of credit constitutes a transfer of property of the issuer, not property of the party who purchased the letter of credit. *Matter of Compton Corp.,* 831 F.2d 586, 589–590 (5th Cir.1987); *In Matter of Marine Distributors, Inc.,* 522 F.2d 791, 795 (9th Cir.1975); *Kupetz v. Continental Illinois National Bank & Trust Co.,* 77 B.R. 754, 765 (C.D.Cal.1987) aff'd, 845 F.2d 842 (1988).

Thus, the only issue addressed by this memorandum is whether, taking the allegations of the first and second claims for relief as true, those claims state legally sufficient claims against Sorani under 11 U.S.C. § 550(a)(1) as an entity for whose benefit the fraudulent transfer was made. Section 550(a)(1) provides as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer *or the entity for whose benefit such transfer was made;* ...
>
> .  .  .  .  .

[Emphasis added]

As noted by Sorani, the Bankruptcy Act, by its terms, permitted recovery only from a transferee, not from an entity for whose benefit the transfer was made. However, a review of the case law reveals an exception to this rule not discussed by either of the parties. Where a third party conspired with the debtor in making the avoidable transfer, the trustee would under some circumstances be permitted to recover the value of the transfer from the third party even if the trustee could not prove that the third party had actually received the property transferred or its proceeds. *National Bank v. National Herkimer County Bank,* 225 U.S. 178, 32 S.Ct. 633, 56 L.Ed. 1042 (1912); *Irving Trust Co. v. Siroty,* 60

F.2d 71, 72–73 (2d Cir.1932). Recovery would be permitted if the third party had received some benefit as a result of the transfer. *Brainard v. Cohn,* 8 F.2d 13 (9th Cir.1925). However, recovery was not permitted if the third party received no benefit. *Elliott v. Glushon,* 390 F.2d 514 (9th Cir.1967); *In re Christian & Porter Aluminum Co.,* 584 F.2d 326 (9th Cir. 1978); *Mack v. Newton,* 737 F.2d 1343 (5th Cir.1984) (Bankruptcy Act case).

Section 550(a)(1) cannot easily be read as a codification of this case law. It does not, by its express terms, require that an entity for whose benefit an avoidable transfer was made have conspired with the debtor in causing the transfer to be made. In addition, it does not, by its express terms, require that the benefit actually be received by the third party. As noted by Sorani, the legislative history in connection with the enactment of 11 U.S.C. § 550(a)(1) is not illuminating. *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 896 (7th Cir.1988).

The difficulty presented by the first issue cited above is noted in *Bonded Financial Services,* 838 F.2d at 895 (7th Cir. 1988). In that case, the trustee attempted to recover from a bank which was a subsequent transferee on the theory that it was also the entity for whose benefit the initial transfer was made. The bank had a valid defense as a subsequent transferee that it took the transfer in good faith and for value. 11 U.S.C. § 550(b)(1) However, as an entity for whose benefit the transfer was made, such a defense would not have been available. The bank argued that it could not be held to be an entity for whose benefit a transfer was made because "... *it* did not 'intend' to be the beneficiary of the transfer; it was not in cahoots with ... [the debtor or the initial transferee] and did not know of their plans." Since the Court held that a subsequent transferee can never be an entity for whose benefit the initial transfer was made, the Court did not find it necessary to decide whether such an entity must also have intended, conspired in or at least known of the intended benefit.

In the instant case, this issue need not be decided either, at least at present, because the Complaint adequately pleads that Sorani did know of, consent to, and participate in the alleged transfers. Complaint, paragraph 14. However, as discussed below, the second issue cited above is presented by the instant motion. (See Section A below.)

## A. FIRST CLAIM FOR RELIEF

The first claim focuses on the transfer of funds from the debtor to Clow. The plaintiff alleges that this initial transfer was fraudulent and was made for the benefit of Sorani. Thus, the plaintiff contends that she may recover the amount of the transfer from Sorani pursuant to 11 U.S.C. § 550(a)(1).

Sorani advances several arguments as to why this claim should fail as a matter of law. First, he contends that he is not liable under 11 U.S.C. § 550(a)(1) because he does not fall into any of the established categories for such entities. He contends that case law has established only three types of entities from which recovery may be had under 11 U.S.C. § 550(a)(1): (1) a debtor of the initial transferee, (2) a guarantor of the debtor's debt to the initial transferee, and (3) the entity that controlled the transfer. In support of the last of these three categories, Sorani cites *In re Checkmate Stereo & Electronics, Ltd.*, 21 B.R. 402 (E.D.N.Y. 1982). Clearly, Sorani notes, he was not a debtor but rather a creditor of the initial transferee. Furthermore, he contends, when the plaintiff alleges, in paragraph 14 of the Complaint, that "Clow ... (2) caused debtor to transfer the proceeds of the Mechanic's bank loan to himself", she concedes that Sorani was not in control of the initial transfer.

This argument has no merit. While former case law may be looked to for guidance, it would be nonsensical to conclude that existing case law has exhausted every possible type of entity from whom recovery may be obtained under 11 U.S.C. § 550(a)(1). Moreover, while it is likely that the defendant in *Checkmate Stereo & Electronics, supra*, controlled the transfer in question, neither the appellate decision by the district court nor the bankruptcy court decision states that he did.[5]

Sorani's second argument is more substantial. He contends that the plaintiff cannot recover from him under 11 U.S.C. § 550(a)(1) because he was not benefitted by the first transfer—from the debtor to Clow, only by the subsequent transfer—from Clow to BankCal. The first claim for relief does not allege that Sorani actually received a benefit as a result of the first transfer. Clearly, he did not.

Sorani's second argument presumes that, to be liable under 11 U.S.C. § 550(a)(1), the entity must actually have received a benefit as a result of the transfer. As noted above, the plain language of 11 U.S.C. § 550(a)(1) does not seem to require that the benefit actually be received. Sorani relies principally upon *In re Universal Clearing House Co.*, 62 B.R. 118 (D.Utah 1986) in support of his position. That case is not particularly helpful to him. *Universal Clearing House* does contain language which suggests that, to be sued under 11 U.S.C. § 550(a)(1), an entity must actually have received a benefit. *Id.*, 62 B.R. at 128–29, n. 12. However, elsewhere in the opinion, the Court expressly rejects such an argument. *Id.*, 62 B.R. at 127. Since this latter position is more clearly expressed, the Court concludes that the inconsistent language was inadvertent. Thus, the authority cited by Sorani actually constitutes authority for the contrary position.

■ If there were any basis for concluding that 11 U.S.C. § 550(a)(1) was intended

---

5. *Checkmate Stereo & Electronics*, the debtor transferred funds to an attorney who represented Wren, the sole stockholder and chief executive of the debtor in a divorce proceeding. The bankruptcy court avoided the transfer and permitted recovery from Wren, rather than the attorney. On appeal, Wren argued that the trustee should be required to recover from the attorney, who had actually received the funds. The Court rejected this argument in two brief paragraphs. Neither the appellate decision nor the bankruptcy court decision discusses the issue of control. *In re Checkmate Stereo & Electronics, supra*, 21 B.R. at 411; *In re Checkmate Stereo & Electronics, Ltd.*, 9 B.R. 585, 610, 623 (Bankr.E.D.N.Y.1981).

to be a precise codification of pre-existing case law pursuant to the line of authority cited in the Introduction, this would provide an alternative basis for Sorani's argument. However, as noted above, the legislative history does not indicate any such intent. In the absence of any authority for a contrary reading of the statute, based on the clear language of the statute, the Court concludes that recovery of an avoided transfer may be ordered under 11 U.S.C. § 550(a)(1) even though the entity did not actually receive a benefit as a result of the transfer.

*Universal Clearing House* does support the second part of Sorani's second argument: that the benefit intended must be with respect to the first transfer, not any subsequent transfer. *Id.*, 62 B.R. 128–29, n. 12. This position is further supported by the statute itself. Section 550(a)(1) states that, to the extent a transfer is avoided, its value may be recovered from the entity for whose benefit "such" transfer was made. The antecedent for the word "such" is clearly the transfer avoided—that is, the initial transfer. However, this conclusion does not compel dismissal of this claim. The Complaint alleges that the initial transfer was made for Sorani's benefit. Complaint, paragraph 19. Thus, the first claim for relief cannot be faulted on this basis.

## B. SECOND CLAIM FOR RELIEF

■ The second claim for relief focuses on the second transfer—from Clow to BankCal. It alleges that, in making this transfer, Clow acted as the constructive trustee of the debtor. This allegation must be taken as true for the purposes of this motion. Thus, the transaction should be analyzed as if the debtor had also made this transfer. Viewed in this fashion, the plaintiff contends that, it cannot seriously be argued that the second claim for relief does not state a legally sufficient claim against Sorani under 11 U.S.C. § 550(a)(1).

As support for this argument, the plaintiff relies principally upon *Matter of Compton, supra,* and *In re Air Conditioning, Inc. of Stuart,* 845 F.2d 293 (11th Cir.1988) *cert denied* 488 U.S. 993, 109 S.Ct. 557, 102 L.Ed.2d 584. In *Compton* and *Air Conditioning,* the Court permitted a trustee to avoid as a preference pursuant to 11 U.S.C. § 547(b) a payment made by the debtor to a bank to obtain the issuance of a letter of credit payable to a creditor in connection with an antecedent debt and to recover the preference from the creditor pursuant to 11 U.S.C. § 550(a)(1) as the entity for whose benefit the transfer was made.

Sorani attempts to distinguish those cases from the instant one based on the differences between preference and fraudulent transfer actions. However, the differences noted do not justify disregarding the rationale of those cases. Sorani also attempts to undermine the authority of *Compton* and *Air Conditioning* by pointing out that the "two transfer"—cited with approval in those two cases—has now been discredited.

The "two transfer" theory was employed in certain preference actions to permit the avoidance as preferences of transfers to noninsider creditors on debt guaranteed by insiders made more than 90 days but less than one year prior to bankruptcy but to permit recovery only from the guarantor, not from the bank. The theory identified two transfers in such a situation—a transfer of money to the noninsider and a second transfer of a benefit to the insider guarantor. *In re V.N. Deprizio Construction Co.*, 58 B.R. 478 (Bankr.N.D.Ill.1986); *In re Mercon Indus., Inc.*, 37 B.R. 549 (Bankr.E.D.Pa.1984). In *Compton* and *Air Conditioning,* the Courts adopted this theory, permitting avoidance of the transfer to the bank issuing the letter of credit, but permitting recovery only from the creditor-beneficiary. As in the insider-noninsider context, the Courts characterized the benefit provided to the creditor from the issuance of the letter of credit as a separate transfer.

Sorani correctly notes that the "two transfer" theory has been rejected by three Circuit Courts in the insider-noninsider context. *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989); *In re Robinson Brothers Drilling, Inc.*, 892 F.2d 850 (10th Cir.1989); *Ray v. City Bank and*

*Trust Co. (In re C-L Cartage Co.)*, 899 F.2d 1490 (6th Cir.1990). Moreover, this theory appears to be no more tenable in the context of a letter of credit than it is in a bank/guarantor context. However, the disparagement of this theory does not effect the force of the Courts' holdings in *Compton* and *Air Conditioning*. In rejecting the "two transfer" theory in the insider/non-insider context, the Courts cited above did not conclude that, since there was only one transfer, the trustee could not recover from the insider entity for whose benefit the transfer was made. Rather, they concluded that the trustee could recover as well from the noninsider bank. Similarly, here, the result of the disparagement of the "two transfer" theory is that a trustee may be also be able to recover from a bank that issues a letter of credit, not that the trustee cannot recover from the entity for whose benefit the transfer was made.[6]

Sorani also argues that he cannot be the entity for whose benefit the transfer was made pursuant to 11 U.S.C. § 550(a)(1) because he is a subsequent transferee. He cites *Bonded Financial, supra*, for the proposition that a subsequent transferee can never be the entity for whose benefit a fraudulent transfer was made within the meaning of 11 U.S.C. § 550(a)(1). In *Bonded Financial*, a principal of a corporation caused the corporation to transfer funds to him fraudulently, then used the funds transferred to pay a personal debt to a bank. The bank accepted the funds and cancelled the principal's personal obligation with no knowledge that the transfer from the corporation to the principal was fraudulent. Under 11 U.S.C. § 550(b)(1), as a subsequent transferee, the bank would have been able to assert these facts as a defense. Treating the bank as an entity for whose benefit the transfer was made would have deprived it of this defense since 11 U.S.C. § 550(b)(1) applies only to subsequent transferees. *Bonded Financial Services, supra*, 838 F.2d at 895.[7] Whether or not *Bonded Financial* is correct, its principle simply does not apply to the instant case. In the instant case, as noted above, Sorani has argued and the Court has expressly held that Sorani is not a subsequent transferee. He received the funds of BankCal, not the debtor's funds or their proceeds.

Sorani also argues that the plaintiff cannot establish that Clow acted as the constructive trustee for the debtor. He contends that to so hold would contravene the statutory scheme of the statutes in question. These statutes draw distinctions between initial transferees and subsequent transferees and accord different rights and liabilities to each type of defendant. To hold that the initial transferee acted as the constructive trustee for the debtor in transferring property to a subsequent transferee would be to rewrite the statute. He cites authority in support of a strict construction of the statute. *In re V.N. Deprizio Construction Co.*, 86 B.R. 545, 550 (N.D.Ill.1988); Pitts, "Insider Guaranties and the Law of Preferences," 55 Am. Bankr.L.J. 343, 347 (1978); and *In re Rob-*

---

6. As a practical matter, it would appear that the rejection of the "two transfer" theory would rarely result in the imposition of liability on a bank that issued a letter of credit in a fraudulent transfer action. Section 548(c) of the Bankruptcy Code provides that:

> ... a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

Section 550(b)(1) provides a similar protection for subsequent transferees of avoided transfers but not for initial transferees. Section 547(c) of

the Bankruptcy Code provides numerous defenses to preference actions but nothing precisely comparable to Section 548(c) or 550(b)(1). Thus, as a direct transferee, the issuer of a letter of credit might be at risk in a preference action notwithstanding the fact that it took the debtor's property in good faith and for value. The same would not be true in a fraudulent transfer action.

7. It does not appear that this result would have been prevented by 11 U.S.C. § 548(c), the provision that would protect it from liability as an initial transferee if it took in good faith for value. That provision does not apply to entities for whose benefit fraudulent transfers have been made.

*inson Brothers Drilling, Inc.*, 97 B.R. 77, 80, n. 1 (W.D.Okl.1988).

This argument has some force. However, at this stage of the proceeding, the Court is not persuaded that, as a matter of law, Clow cannot be held to have acted as the debtor's constructive trustee in purchasing the Certificate of Deposit and using it to secure the Letter of Credit. Whether one party will be deemed to have acted as a constructive trustee for another depends on equitable consideration viewed in the context of all relevant facts. *Torres v. Eastlick*, 767 F.2d 1573, 1575 (9th Cir. 1985), *cert. denied*, 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). Plaintiff should not be denied the opportunity to present those facts in an attempt to persuade the Court that such a ruling is proper. Moreover, this argument is somewhat akin to a "conduit" theory—i.e., that Clow was nothing more than a conduit through which the debtor's funds passed to Bank-Cal and that BankCal should therefore be considered the initial transferee. This theory has been generally accepted in the context of preference and fraudulent transfer actions. *Russell v. Bowen*, 856 F.2d 81 (9th Cir.1988); *In re Dietz*, 94 B.R. 637 (Bankr. 9th Cir.1988); *In re Mill Street, Inc.*, 96 B.R. 268 (Bankr. 9th Cir.1989). Yet, it too alters the statutory scheme of 11 U.S.C. § 550(a) and (b). There is no apparent reason why a "conduit" allegation should be legally sufficient and a "constructive trustee" allegation not be.

The Court has observed one defect in the pleading of the second claim for relief that has not been raised by Sorani. Unlike the first claim for relief, the second claim for relief does not allege that the transfer by Clow, as constructive trustee for the debtor, was made for the benefit of Sorani. As to this defect alone, the motion to dismiss is granted without prejudice.

### CONCLUSION

The first claim for relief states a legally sufficient claim, and the motion to dismiss it is denied. The second claim for relief contains one defect—it fails to allege that the transfer in question was made for the benefit of Sorani as required by 11 U.S.C. § 550(a)(1). This appears to be mere oversight. The facts otherwise alleged make it clear that such an allegation may be made. Thus, the motion to dismiss the second claim for relief is dismissed without prejudice. The plaintiff is given twenty days from the date of service of this Memorandum and the accompanying Order to file an amended complaint in accordance with this decision and with the Court's oral rulings at the hearing on the motion.