### In re ATTAWAY, INC., Debtor.
### (Two Cases.)

### Ronald R. STICKA, Trustee in Bankruptcy, Plaintiff,

### v.

### BESTLINE, INC., Defendant.

### Ronald R. STICKA, Trustee in Bankruptcy, Plaintiff,

### v.

### EAST RIVER LUMBER & GRAIN, Defendant.

Bankruptcy No. 692–62575–HO7. Adv. Nos. 94–6152psh, 94–6186psh.

United States Bankruptcy Court, D. Oregon.

April 3, 1995.

Douglas Schultz, for trustee.

Robert Vanden Bos and Thomas Lallier, for Best Lines and East River Lumber and Grain.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

These cases involve complaints by the trustee, Ronald R. Sticka, to recover preferential transfers made by the debtor, Attaway, Inc. The legally relevant facts in each are identical. The trustee's complaint alleges that these payments were made to the defendants within 90 days of the debtor's filing of its voluntary petition in bankruptcy. Defendants Best Line, Inc. and East River Lumber & Grain responded with Motions to Dismiss for failure to state a claim or, in the alternative, Motions for Summary Judgment. Because the Motions to Dismiss were accompanied by additional documents which were not excluded by the court they shall be treated by the court as motions for summary judgment. Fed.R.Civ.P. 12(b); Fed. R.Bankr.P. 7012(b). The record reveals the controversy is ripe for decision on these mo-

tions. For the reasons stated below, defendants' motions are denied.

A party is entitled to summary judgment if the pleadings and evidence show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party is not required to produce evidence negating the opponent's claim, but need only point out to the court the absence of evidence to support the opponent's case. *Id.* at 325, 106 S.Ct. at 2553–54. Once the moving party meets this burden, the party opposing the motion then has the burden of showing that there remains a genuine issue as to some material fact. To do this, the non-moving party must present affirmative evidence of a disputed material fact from which a jury might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Two provisions of the Bankruptcy Code govern the recovery of preferential transfers. 11 U.S.C. § 547(b) provides:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; . . .

Section 550(a) provides:

> Except as otherwise provided in this section, the extent that a transfer is avoided

under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; . . .

In his complaint the trustee alleges all of the elements of an 11 U.S.C. § 547(b) transfer, including the allegation that preferential payments were made by the debtor to the defendants. In support of their motions, the defendants filed statements of material fact and affidavits of John R. Butler, General Manager of Best Line, and Neil Charpentier, President of East River Lumber. These documents allege that the defendants sold the relevant bills of lading to Transport Clearing (hereinafter "Transport") prior to any payments being made, and that the debtor knew of these assignments and made all the payments on the bills of lading directly to Transport. Therefore, they contend, the trustee's avoidance of the transfers fails to state a claim in one essential element of 11 U.S.C. § 547(b)(1): that the payments be "to or for the benefit of the creditor."

The trustee responded with copies of the relevant contractual documents.[1] He alleges that under the terms of the User Service Contracts between the defendants and Transport, Transport purchased all of the freight bills "with recourse," thereby enabling Transport to sell back any uncollected bills to the defendants, leaving the defendants then to look to Attaway for payment. In fact no bills were ever returned to the defendants. Nevertheless, the trustee argues that Attaway's payments to Transport were "for the benefit of" the creditor defendants within the meaning of 11 U.S.C. § 547(b)(1), since, if they hadn't been made, Transport would have been able to pursue its recourse rights against the defendants.

■ Whether the defendants are creditors

---

1. He did not controvert the statements in the defendants' supporting materials. The court,

therefore, for the purpose of addressing these

within the meaning of the Bankruptcy Code [2] and whether the payments to Transport were "for the benefit" of the defendants, turns on the contractual rights and obligations which appear in the User Service contracts between Transport and the defendants.

Transport was a factor for the defendants. It purchased bills of lading from both defendants in exchange for providing ready funds at a discount. The purchases were governed by the terms of the User Service Contracts entered into between the defendants and Transport. Under the agreements all "interline bills", defined as "a bill rendered by one member carrier against another member carrier", were sold with recourse. In this case, both the defendants and the debtor were "member carriers". Consequently, all of the bills at issue were purchased with recourse.

The User Service Contracts do not define the term "with recourse,". However, language in the Security Agreements executed by the parties in conjunction with the User Service Contract contains an implied definition of that term.[3] The Security Agreements granted Transport a first position security interest in all accounts purchased from the defendants. The Agreements state, however, that "[t]his first priority security interest of [Transport] shall not apply to any accounts not purchased by [Transport] nor to accounts charged back to Debtor pursuant to [Transport's] recourse rights against the debtor."[4] This language implies an understanding of the parties that Transport's recourse rights entitled it to charge back uncollected bills to the defendants.

The term "recourse" is a well-recognized one in commercial law. Black's Law Dictionary defines "recourse" as "[t]he right of a

holder of a negotiable instrument to recover against a party secondarily liable ..." and defines "with recourse" as a "[t]erm which may be used in indorsing a negotiable instrument and by which the indorser indicates that he remains liable for payment of the instrument." (5th ed. 1979).

ORS 73.0414(5), dealing with negotiable instruments, provides:

> If a draft states that it is drawn "without recourse" or otherwise disclaims liability of the drawer to pay the draft, the drawer is not liable under subsection (2) of this section to pay the draft if the draft is not a check.

Subsection (2) of the section would otherwise require the drawer to pay the draft upon dishonor. Similarly, ORS 73.0415(2) provides:

> If an indorsement states that it is made "without recourse" or otherwise disclaims liability of the indorser, the indorser is not liable ... to pay the instrument.

Both of these provisions track language in the Uniform Commercial Code. The Official Comment to UCC Sec. 3–414(e) gives as an example the Seller of goods to Buyer who draws a draft on Buyer for the price of the goods, payable upon delivery to the drawee of an order bill of lading covering the goods. The Seller then delivers the draft and bill of lading to Finance Company named as payee of the draft. If Seller drew without recourse, Finance Company takes the risk that Buyer will dishonor, and cannot recover from Seller in that event, but can sell the goods to obtain reimbursement.

---

motions, accepts as true the statements made therein.

2. 11 U.S.C. § 101(10)(A), for purposes of federal bankruptcy law, defines "creditor" as "an entity that has a claim against the debtor." Section 101(5)(A) defines "claim" broadly as a

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured[.]

The existence of any right to payment, however, is determined by state law.

3. The Security Agreements were entered into between Best Line, Transport, and Midwest Federal Savings & Loan Association of Minneapolis, on the one hand, and East River Lumber, Transport and Norwest Bank on the other. Each granted Transport a first position security interest in the accounts it purchased and subordinated a security interest earlier granted by the defendant to the bank in the accounts to Transport.

4. Upon charge back of an account, Transport's security interest in that account ended and the respective bank resumed a first position security interest in the account.

The term "with recourse" therefore implies the opposite result—that the drawer, or indorser, or transferor of the document will be liable if the document is not honored by the primary obligor. Since, in the present case, upon sale of the bills of lading, Transport preserved its recourse rights against the defendants, the ultimate risk of Attaway's non-payment would fall upon the defendants. If Attaway had not made the payments to Transport and Transport had charged back the bills of lading to the defendants, they would then have had a right to payment or a "claim" against Attaway for payment on the bills.

The fact that this claim was contingent does not make it any the less a claim under § 101(5), which explicitly includes contingent debts within its definition. As the Ninth Circuit has stated: "[T]he rule is clear that a contingent debt is 'one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987 (citing *Brockenbrough v. Commissioner,* 61 B.R. 685, 686 (W.D.Va.1986). Because the defendants had a contingent claim against the debtor they were creditors of the debtor within the meaning of § 547(b).

That being so, were the payments to Transport "for the benefit of" the defendants within the meaning of § 547(b)(1)? Apparently this is an issue of first impression. No reported case this court has found has dealt with whether payments by a debtor to a purchaser or assignee who purchased from a creditor "with recourse" constitute payments "for the benefit of the creditor."

The closest reported analogous facts appear to be those in which a debtor makes payments on a loan which has been guaranteed by a third party. Such payments have been held to be "for the benefit of" the guarantor within the meaning of § 547(b)(1).[5] The leading case is *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr.),* 874

F.2d 1186 (7th Cir.1989) ("Deprizio"). The court interpreted the Code to equate "transfer" with "payments made":

> Sections 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor. . . . A single payment therefore is one "transfer", no matter how many persons gain thereby.

*Id.* at 1195–96. In the situation where a firm borrows money from a lender, with payment guaranteed by the firm's officer, the court said:

> A payment ('transfer') by Firm to Lender is 'for the benefit of' Guarantor under § 547(b)(1) because every reduction in the debt to Lender reduces Guarantor's exposure. Because the payment to Lender assists Guarantor, it is avoidable under § 547(b)(4)(B) [within the one year period] . . ."

*Id.* at 1191 (citation omitted). Consequently, a transfer is potentially avoidable where shown to be "for the benefit of a creditor" within the meaning of § 547(b), although paid directly "to" another creditor.

Although some courts have disagreed with the *Deprizio* conclusion, the Ninth Circuit reached the same conclusion in *In re Sufolla, Inc.,* 2 F.3d 977 (9th Cir.1993). The Ninth Circuit agreed with *Deprizio* that it is the transfer which is avoided, not the beneficiary, quoting with approval the *Deprizio* language on avoidability cited above. In so holding the court also rejected the Deprizio bankruptcy court's use of its "equitable powers" to circumvent the "plain meaning" of §§ 547(b) and 550(a), an approach followed by other courts who disagreed with the Deprizio holding. The Ninth Circuit noted that the courts of appeals who discussed the equitable approach unanimously rejected it, and stated: "[W]e decline to depart from a literal reading of the Code." 2 F.3d at 981. *Accord., In re AEG Acquisition Corp.,* 161 B.R. 50 (9th Cir. BAP 1993) (applying *Sufolla* in an insider co-obligor situation); and *In re Skywalkers, Inc.,* 49 F.3d 546 (9th Cir.1995)

---

5. This latter circumstance has been considered in the context of whether the 90–day period for recovery of transfers to a non-insider creditor of the debtor can be extended to the one-year recovery period for transfers to an insider when payment has been guaranteed by an insider The issue of extension of the preferential period is not before this court.

(insider guarantors; case was decided under pre–1994 B.R.A. law).

This court considered certain "anti-*Deprizio* " contractual provisions in *In re XTI Xonix Technologies Inc.*, 156 B.R. 821 (Bankr. D.Or.1993). In *Xonix* the insider guarantors of loans from a bank to their corporation had signed documents subordinating their rights against the corporation, in the event of their payment of any of the loan amount, to any claims the bank still had against the corporation. The guarantors specifically waived all of their rights of indemnity, contribution or exoneration against the corporation which they would otherwise have had as guarantors. I found that consequently the guarantors were not creditors of the debtor; therefore the debtor's payments to the bank could not be "for their benefit" within the meaning of § 547(b)(1).

In *In re Erin Food Services, Inc.*, 980 F.2d 792 (1st Cir.1992), the court assumed without deciding that the *Deprizio* ruling was correct, but declined to find that the transfers to the outside creditor in a Chapter 11 proceeding conferred a benefit upon the insider-guarantor greater than he would have received under a Chapter 7 proceeding, a requirement for avoidance under § 547(b). The insider had signed what was described in the opinion as a "personal non-recourse guaranty" for the corporation's loans, secured by the guarantor's own real estate which did not cover the majority of the corporation's debt. The court determined that since the personal guaranty was without recourse the secured lenders' only remedy would be to foreclose on the collateral. Because the insider would have a contingent claim against the corporation equal to the value of his collateral, he as well as the secured lenders was a creditor of the corporation. However, since the transfers to the lenders did not reduce the amount of the debtor's obligation below the value of the guarantor's collateral, there was no reduction of his exposure on the debt and therefore no benefit to him from the payments. In the present case, by contrast, because Transport had a full right of recourse against defendants, payments to Transport reduced defendants' exposure dollar for dollar.

■ If the debtor's payments to creditors are deemed to be "for the benefit of guarantors" and, by analogy, to the defendants in this case, from whom may the payments be recovered? As the court noted in *Deprizio, supra:* "Section 547(b) defines which transfers are 'avoidable' ... After § 547 defines which transfers may be avoided § 550(a) identifies who is responsible for payment." 874 F.2d at 1194. See also *Sufolla, supra:* "Under Deprizio, once it is determined that the elements of § 547(b) are satisfied, the unambiguous language of § 550(a) then identifies the party responsible for repayment of the preference." 2 F.3d at 980.

■ Under 11 U.S.C. § 550(a)(1), to the extent any transfer is avoided under § 547, recovery of such transfer may be had from either the transferee or the entity "for whose benefit such transfer was made." Section 550(d) also provides that the trustee "is entitled only to a single satisfaction under subsection (a) of this section." This language suggests that the trustee has a choice of parties from whom to seek recovery. Under this statutory language the category of those from whom recovery may be sought is not limited only to the parties to whom the transfers were actually made. Therefore, the fact that the payments were not made to the defendants does not preclude recovery from them. See *In re Richmond Produce Company, Inc.*, 118 B.R. 753, 758 (Bankr.N.D.Cal. 1990), involving recovery of fraudulent transfers: "[T]he plain language of 11 U.S.C. § 550(a)(1) does not seem to require that the benefit actually be received [by the party from whom recovery is sought]."

Several courts have upheld recovery under § 550 from guarantors who did not receive the avoided transfer. *In re Finn*, 909 F.2d 903 (6th Cir.1990), involved an avoidance action by the trustee against a guarantor for loan payments made to the debtor's credit union. The Sixth Circuit found that the trustee had established all of the elements for an avoidable transfer, but remanded for a determination as to whether the payments were made in the ordinary course of the debtor's financial affairs. The court did not indicate that the guarantor was an improper party from whom to seek recovery, or that

recovery should have been sought from the transferee instead.

In dicta, the Eleventh Circuit has noted the benefit that accrues to a guarantor when a debt is paid:

> In the typical case where a guarantor is the "entity" from which the trustee can recover under section 550(a)(1), there is a real and immediate financial benefit to the guarantor. By the debtor satisfying the underlying obligation, the guarantor is relieved of his matured obligation to pay any unsatisfied portion. This relief from an obligation to pay money is the economic equivalent of the receipt of money by one to whom money is owed.

*In re Coggin*, 30 F.3d 1443, 1453–54 (11th Cir.1994).

*Matter of Prescott*, 805 F.2d 719 (7th Cir. 1986) involved both a guarantee and a subordinated interest in a security. The debtors had received a loan from a bank secured by the debtors' inventory and accounts receivable. A food corporation guaranteed part of the loan and held a second lien in the security. The court found that payments made by the debtors to the bank, and the bank's offsetting of funds in debtors' bank accounts, constituted preferential transfers to both the bank and the food corporation. The transfers benefitted the food corporation both as a guarantor and as a junior lienholder, and recovery could be had from it to the extent it received a benefit, although it had received none of the debtor's payments.

Unlike many guarantors, here the defendants have no insider relationship to the debtor. However, as the court said in *In re Richmond Produce Company, supra*, in which a party had unsuccessfully argued that recovery under § 550(a)(1) was limited to beneficiaries who were either debtors of the transferee, guarantors, or entities who controlled the transfer: "While former case law [involving grantors, transferees' debtors, or entities controlling the transfer] may be looked to for guidance, it would be nonsensical to conclude that existing case law has exhausted every possible type of entity from whom recovery may be obtained under 11 U.S.C. § 550(a)(1)." 118 B.R. at 758. In that case, the court refused to dismiss the claim against a creditor of the transferee.

Other courts have also allowed recovery against parties who were not guarantors but who were found to have benefitted from payments made to other entities. In *In re H & S Transp. Co., Inc.*, 939 F.2d 355 (6th Cir. 1991), the trustee of an entity which operated a towboat sought to recover from the towboat's corporate owner as preferential transfers payments made by the debtor to suppliers of towboat fuel. The court agreed that the owner was a creditor because it would have had a right of indemnity against the debtor had the fuel debt not been paid and had the fuel suppliers then executed their statutory liens upon the towboat. However, the court denied the trustee's claim on the alternate grounds that new value had been provided by the owner to the operator for these payments, and that the trustee's settlement with the fuel providers was the "single satisfaction" to which it was entitled under § 550(a). Although the court did not specifically state that, absent these defenses, recovery would have been permitted from the towboat owner, its reasoning that the owner was subrogated to the rights and defenses of the fuel suppliers by virtue of the liens upon its boats would imply this result.

*In re Checkmate Stereo & Electronics, Ltd.*, 21 B.R. 402 (E.D.N.Y.1982), involved a payment by the debtor to the defendant's lawyer, who had represented the defendant in his divorce proceeding. The payment was applied to the defendant's personal debt to his attorney. Although the court did not specifically find that the defendant was a creditor, it held that the payment could be recovered from him under § 550(a)(1), since the payment was for his benefit.

In a case involving an attempted avoidance of a fraudulent transfer the court held that the trustee could recover the funds from the FDIC, as the initial transferee. The court went on to state that although the corporate debtor's principal was not a party to the proceeding the trustee could have sought recovery from her under § 550(a)(1) as the entity benefitted by the transfer. The principal had caused the debtor to issue a check to pay a personal debt. *In re M. Blackburn*

*Mitchell Inc.,* 164 B.R. 117 (Bankr.N.D.Cal. 1994).

The language of § 550(a) and the reasoning of these cases make it clear that recovery may be had from the defendants. The court recognizes that the holding in this case may appear to some as more inequitable than those cases in which the transferee has obtained recovery under § 550 from a defendant who did not receive the payment from the debtor, but who had an inside relationship with the debtor. The Supreme Court has stated on numerous occasions, however, that this court's equitable powers cannot be exercised to overrule the plain meaning of the statute. The court notes that defendants did receive consideration for the bills of lading, unlike a guarantor who has received no cash in hand in exchange for his exposure.

Under the relevant Code language and pursuant to the terms of the parties' contracts the defendants are creditors of the debtor. Attaway's payments to Transport were made for the benefit of them pursuant to § 547(b)(1). These payments may be recovered from them under § 550(a)(1). Therefore, defendants' motions are denied.

The court is unable to grant affirmative relief to the plaintiff because he has filed no cross-motion for summary judgment. The matter will be set for a status call. This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 7052, they will not be separately stated.

An order consistent herewith shall be entered.